**CARTER PRODUCTS, INC., a Maryland corporation, Plaintiff-Appellant,**

v.

**FLEETWOOD COMPANY, an Illinois corporation, and Nelson J. McMahon, Defendants-Appellees.**

**No. 14179.**

United States Court of Appeals Seventh Circuit.

June 1, 1964.

Rehearing Denied July 8, 1964.

SCHNACKENBERG, Circuit Judge.

Carter Products, Inc., a Maryland corporation, plaintiff, has appealed from a judgment in favor of Fleetwood Company, an Illinois corporation, and Nelson J. McMahon, defendants, and an order thereafter entered by the district court to amend its findings of fact.

In its complaint plaintiff sought an injunction against defendants based upon unfair competition, injury to its business reputation, dilution of its trademark[1] and infringement of said trademark.

Wallace Laboratories, a division of plaintiff, is a leading producer of ethical drug products (those sold by physician's prescription). It markets nationally, including in Illinois, a wide variety of ethical drugs, including preparations to control appetite. Plaintiff acquired the name WALLACE in 1933 with its acquisition of Wallace Laboratories.

Wallace Laboratories uses the name WALLACE as both a trademark and a trade name to identify itself as the source of its many ethical drug products. These products, which have been widely advertised and sold for decades under the WALLACE name, include a great variety of tranquilizers, antidepressants, appetite control preparations and estrogens. These products are distributed through hospitals, drugstores and prescription pharmacies throughout the United States. As found by the district court, the name WALLACE is established in the medical and drug professions as a symbol of high quality and reliability.

Defendants' WALLACE Super Dietary Mealz was introduced as a wholly new product on January 2, 1960. It is a dietary supplement in a powdered form, and is designed for consumption in milk in connection with "An Easy Low Calorie Weight Control Plan for High Nutrition and Easier Reducing". Defendants' sales of this product are made directly to the lay public by mail order and through drugstores, department stores, dime stores, supermarkets and similar retail outlets. It uses the name WALLACE on the

Dean A. Olds, Gerrit P. Groen, Jerome Gilson, Hume, Groen, Clement & Hume, Chicago, Ill., for plaintiff-appellant, William L. Hanaway, Clifford B. Storms, Breed, Abbott & Morgan, New York City, of counsel.

James R. McKnight, Chicago, Ill., for appellees.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit Judges.

1. § 22, Ch. 140, Ill.Rev.Stats. (1963).

Fleetwood letterhead and prominently on the labels of WALLACE Super Dietary Mealz, both in the product name and to identify it as "Distributed by WALLACE (Div. of Fleetwood Company)".

Historically, defendants' use of the name WALLACE originated about 1920 when Wallace Rogerson originated and conducted a mail order phonograph record business, selling records containing weight-reducing exercise instructions with musical accompaniment. Probably in 1936, he extended the weight-reducing instruction to a radio program in Chicago which, as well as the phonograph record business, was known by the WALLACE Method name and the "Get Thin to Music" slogan.

Upon Rogerson's death in 1943, his widow continued the mail order record business, which became defendants' in 1959, when she transferred whatever interest she had to Fleetwood Company.

While the district court by its findings recognized that plaintiff's mark "WALLACE" is favorably established in the medical profession, and that defendant marketed its dietary supplement under the name of WALLACE Super Dietary Mealz, the court denied plaintiff relief. It found that plaintiff does not have a trademark registration from the United States patent office, but has registered "WALLACE" in Illinois pursuant to the aforesaid chapter 140 of the Illinois statutes.

The court also found that defendant company and its predecessors have used the name WALLACE in conjunction with physical exercises through the use of phonographic records and related products such as reducing bread, wafers, and sweat shirts since 1921. It further found that in 1960 it offered a dietary food supplement under the name of Wallace Super Dietary Mealz, which name was registered in the United States patent office on January 23, 1962. Its sales were through mail orders, supermarkets, grocery stores and drugstores and were secured by direct mail, newspaper or other means of consumer advertising.

We consider it significant that the products of the parties to this case were sold through different channels and in different markets.

The court made a finding that there is "no evidence that any physician or pharmacist was in fact led to believe that Fleetwood's 'Wallace Super Dietary Mealz' was a product of plaintiff nor is there any evidence that either party ever received any inquiries or orders for the other party's products." The court further found that there has been no actual confusion between plaintiff's and defendants' products, because they are not competitive and the means for distributing and promoting them are substantially different. It concluded that plaintiff's trademark " 'Wallace' for prescription goods and ethical drugs is not infringed by defendant's trademark 'Wallace Super Dietary Mealz' for a dietary food supplement", and that there "is no basis under common law, the Lanham Act or the appliable Illinois Statutes for enjoining defendants' use of its trademark 'Wallace Super Dietary Mealz' ".

The court concluded that the complaint should be dismissed without costs. We agree that this disposition of the case is supported by the evidence and the law and, for that reason, the judgment and order from which this appeal was taken are affirmed.

Judgment and Order affirmed.

SWYGERT, Circuit Judge (dissenting).

Two medical experts testified for Carter Products. Dr. Paul A. Dailey, Chairman of the Illinois State Medical Society Committee on Nutrition, in substance testified that defendants' advertising of their Wallace Super Dietary Mealz would injure Carter's business reputation among physicians because they would believe that defendants' product emanated from plaintiff. Dr. James R. Wilson, a nutrition specialist who had worked for the American Medical Association, testified that physicians "would wonder who put this [defendants' product] out * * whether it was Wallace of New Jersey

[Carter] or somebody else * * * their judgment * * * would be unfavorable if they thought Wallace of New Jersey put it out." Defendants offered no contrary evidence. Thus, the likelihood of confusion in the minds of physicians, potential customers of plaintiff, as to the source of defendants' product, as well as the likelihood of injury to plaintiff's business reputation, was clearly established.

The majority opinion points out that the district court found no actual confusion between plaintiff's and defendants' products. Actual confusion, however, is not necessary; only likelihood of confusion need be shown. Lady Esther, Ltd. v. Lady Esther Corset Shoppe, 317 Ill.App. 451, 46 N.E.2d 165, 148 A.L.R. 6 (1943). In Metropolitan Life Ins. Co. v. Metropolitan Ins. Co., 277 F.2d 896 (7th Cir. 1960), with reference to the Illinois Trademark Act, Ill.Rev.Stat. ch. 140, §§ 19–22, this court said:

> "It is well established in Illinois and by the decisions of this circuit that injunctive relief is properly granted in cases involving the use of deceptively similar names even though there is no proof of *actual* confusion. It is sufficient to show the *likelihood* that confusion will result and that the public might be misled. * * * This is so even where there is no competition between plaintiff and defendant."

The majority emphasizes the fact that the products of the parties are sold through different channels and in different markets. Even though Carter's products are sold by prescription and defendants' product is sold to the public without prescription, the likelihood of confusion and the resulting dilution of the distinctiveness of plaintiff's trade name are not negated. Recently, this court in Sterling Drug Inc. v. Lincoln Laboratories, Inc., 322 F.2d 968 (7th Cir. 1963), held that likelihood of confusion as to the source of origin of the products existed even though the product "Diaparene" was sold through normal drug channels without prescription and the

product "Dyprin" was sold primarily to physicians and drug stores. In that case we said:

> "That a substantial portion of defendant's somewhat limited distribution of its product represents sales to physicians who directly dispense it, and that it is often bought on prescription issued by a physician, do not serve to assure elimination of the likelihood of confusion as to *source of origin* which the other factors precipitate."

The disparity in products and markets was even more pronounced in Polaroid Corp. v. Polaraid, Inc., 319 F.2d 830 (7th Cir. 1963). There, this court held that a manufacturer of refrigeration and heating systems should be enjoined from using the trade name "Polaraid" because of the likelihood of confusion with the trade name "Polaroid" used by a manufacturer of optical devices and photographic equipment. Judge Major, speaking for the court, disposed of the argument that the parties' products were not sold to the same outlets or to the same type of customers on the grounds that this is a traditional argument made against a charge of unfair competition and "it is without force where a party adopts the invented or coined trademark or trade name of another."

In the instant case the trade names are identical, the products are similar. Moreover, the likelihood of confusion as to the source of the products and the dilution of the distinctive quality of plaintiff's trade name were established. In my opinion these facts present an even stronger case for injunctive relief under the Illinois statute than did Polaroid.

There, this court said:

> "[The Illinois Trademark Act] * * * furnishes the basis for two causes of action: (1) if there exists a likelihood of injury to business reputation or (2) if there is a dilution of the distinctive quality of the mark or trade name. Moreover, it relieves an aggrieved party of the burden of proving competition be-

tween the parties or proving confusion as to the source of goods or services.

The instant case falls squarely within this interpretation of the Illinois statute.

The majority opinion does not attempt to distinguish the previous decisions of this court. In fact, they are not mentioned; nor indeed is any case cited to support the holding of the court. I would reverse.