**YE OLDE TAVERN CHEESE PRODUCTS, INC., an Illinois corporation, Plaintiff,**

**v.**

**PLANTERS PEANUTS DIVISION, STANDARD BRANDS INCORPORATED, a Delaware corporation, Defendant.**

**No. 64 C 1187.**

United States District Court
N. D. Illinois, E. D.

Sept. 29, 1966.

John C. Brezina, Alberts, Brezina & Lund, Chicago, Ill., for plaintiff.

Carl S. Lloyd and Ronald L. Engel, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., Leslie D. Taggart, Nicholas John Stathis, Albert Robin and Ernest R. Brendel, Watson, Leavenworth, Kelton & Taggart, New York City, James

E. Sapp, Jr., and Wesley E. Forte, New York City, for defendant.

## MEMORANDUM OPINION

DECKER, District Judge.

This is a suit for trademark infringement, unfair competition, trademark dilution and injury to business reputation. It has been brought under the Lanham Act, 15 U.S.C. §§ 1051–1127, under Illinois statutes dealing with trademark registration, Ill.Rev.Stat. ch. 140, §§ 8–22 (1965), and under common law principles of trademark infringement and unfair competition.

Plaintiff, Ye Olde Tavern Cheese Products, Inc. (formerly Cheese Products Co., Inc.) is an Illinois corporation, engaged in the wholesale distribution of various snack products and accessories for use in the tavern or restaurant trade. Defendant, Planters Peanuts Division, Standard Brands, Inc., is a Delaware corporation, with its principal place of business in New York City, and with a regular office in Chicago, Illinois. Defendant processes and sells various nuts and other snack products in interstate commerce, including the Chicago area.

Plaintiff's predecessor initially registered the mark "Ye Olde Dairy Tavern" with the United States Patent Office on November 2, 1937 (U.S.Reg. No. 351,-558), for use on various dairy products. Plaintiff amended this registration in 1957, changing the mark to "Ye Olde Tavern," and limiting its use to cheese products. On January 22, 1957, plaintiff obtained registration of the mark "Ye Olde Tavern" in English script for use on cheese, mayonnaise, salad dressing, pickle relish, lemon beverage mix, cherries and olives (U.S.Reg. No. 640,-431). Finally, on December 12, 1965, after the commencement of this suit, plaintiff obtained registration of "Ye Olde Tavern" for use on a variety of products, including those listed above, salted and unsalted nut meats, anchovies and sardines (U.S.Reg. No. 800,467). Plaintiff obtained Illinois registration of "Ye Olde Tavern" in English script in 1939, and renewed this registration for ten years from January 1, 1957, in 1956 (Ill.Reg. No. 16,549).

Commencing at least as early as 1958, plaintiff has been packaging and distributing various snacks, including salted and unsalted nut meats, in individual cellophane bags stapled to large cards. Plaintiff sells and has sold these products primarily to taverns, restaurants and cocktail lounges, generally through middlemen referred to as "wagon distributors." The individual bags and the cards have borne the label "Ye Olde Tavern" in English script and superimposed upon a facsimile of a wooden signboard. Plaintiff's sales have been generally limited to the Chicago area, roughly fifty to seventy-five miles from the city.

In July 1964, defendant Planters placed for sale on the Chicago market a product which it identified as "Planters Ye Olde Tavern Nuts." This product was packaged in individual cellophane bags, packed in small boxes which could be opened up as display cases. Defendant advertised this product for sale primarily to taverns and bars. It is apparent from the evidence and testimony that these nuts were "dry roasted, sugar coated, redskin peanuts" and designed to compete with similar nuts, such as "Beer Nuts." After receiving notice from its Chicago office of plaintiff's objections and the filing of a complaint in the present suit, defendant immediately removed its product from the market. About three months later, defendant reintroduced this product, in the same form, but under the label "Planters Tavern Nuts." These nuts have since been sold, aside from temporary withdrawal due to product quality problems, in the Chicago area generally to the same retailers as plaintiff's.

Plaintiff's amended and supplemental complaint seeks relief with respect both to defendant's use and sale of "Planters Ye Olde Tavern Nuts" and "Planters Tavern Nuts." The relief sought on each cause of action includes an injunction against defendant's use of "Ye Olde Tavern" or "Tavern" on its products in the

Chicago area, an accounting of profits, treble damages and costs and fees.

Initially, defendant brought a counterclaim for trademark infringement and unfair competition, based on defendant's registration of "Cocktail" (U.S.Reg. No. 658,864) and plaintiff's designation "Cocktail Treat" on its packages of nut meats. Defendant has offered no proof on this counterclaim and seeks its dismissal. However, plaintiff has refused to stipulate to this dismissal and has alleged and sought to prove as an affirmative defense that defendant's trademark is invalid in that it was procured through fraud and also has been abandoned. Plaintiff seeks cancellation of this mark.

This Court has jurisdiction in this suit by virtue of the federal trademark laws (15 U.S.C. §§ 1051–1127), 28 U.S.C. § 1338, and diversity of citizenship of the parties.

A trial has been held by the Court, and this opinion is based upon the evidence introduced in the trial and the briefs filed by the parties. The opinion embodies the findings of fact and conclusions of law required by Rule 52(a), Federal Rules of Civil Procedure.

### I.

■ Plaintiff's first cause of action concerns defendant's use of "Ye Olde Tavern" for a very short period in 1964. Testimony at the trial disclosed that the first sale of defendant's product under this label occurred in June 1964, that shipment to the first customer was made on or about July 5 or 6, 1964, that the Chicago office reported plaintiff's objection to the New York office on about July 9, 1964, and that the product was immediately removed from the market on about July 15 or 16, 1964, after notice was received of the filing of plaintiff's present suit. There was no evidence that defendant has since marketed or intends

to market products bearing this label. An injunction is not available here. See, e. g., Champion Spark Plug Co. v. Reich, 121 F.2d 769 (8th Cir. 1941); cf. Walling v. T. Buettner & Co., 133 F.2d 306 (7th Cir.) cert. denied 319 U.S. 771, 63 S.Ct. 1437, 87 L.Ed. 1719 (1943). Plaintiff has not shown any damages or harm resulting from this specific act. Any sales which actually occurred would have been minimal. Therefore, I hold that plaintiff is not entitled to relief under its first cause of action.

### II.

■ Essentially, plaintiff's case is one of trademark infringement under the common and statutory law.[1] Its proof consisted of demonstrating that it had obtained prior registration and use of the trademark "Ye Olde Tavern," that defendant subsequently used the word "Tavern" in competition with plaintiff, and in the submission of samples of the two bags and other items bearing the labels of defendant and plaintiff. The evidence also established that defendant knew of plaintiff's mark and operations in the Chicago area at the time defendant entered that market in 1964 with products containing "Tavern" on their labels.

■ The test for trademark infringement is generally stated to be "likelihood of confusion" of ordinary purchasers purchasing in the ordinary manner. See, e. g., McLean v. Fleming, 96 U.S. (6 Otto) 245, 251, 24 L.Ed. 828 (1877). Trademark infringement should be distinguished from unfair competition; the former is a narrower concept based upon the use by another of one's distinctive mark, or of a salient part of it, and does not necessarily depend upon the whole appearance or "dress" of the products. The plaintiff in a trademark infringement suit has an easier burden of proof, in that the prior use of the trademark gives rise to a presumption of ex-

1. Since the principles of trademark law and tests for infringement are basically the traditional ones of the common law, I do not propose to discuss the common law and statutory provisions separately. Registration under federal or state stat-

utes does not create a valid trademark or establish new rights, although it does facilitate the proof of issues such as prior use, value, or exclusive right. See generally 2 Nims, Unfair Competition and Trade-Marks §§ 223–223b (4th ed. 1947).

clusive right to it, and renders unnecessary proof of an actual intent to defraud or of specific association by purchasers of the mark with the producer. Moreover, registration under the Lanham Act or Illinois statute creates a presumption of adoption and continued use and is prima facie evidence of validity. The plaintiff in a trademark infringement suit must show prior use of its own mark and the defendant's use of a "confusingly similar" mark in competition with it. See generally 1 Nims, Unfair Competition and Trade-Marks §§ 1, 221b–221p (4th ed. 1947).

There is no problem here as to the prior use by the plaintiff of its own mark. The only question is whether plaintiff has shown that defendant is using a "confusingly similar" mark.

■ Plaintiff and defendant have primarily disagreed upon the nature and sufficiency of evidence required to meet this burden of proof. Both parties agree that the test is not simply a "side-by-side" one, made by the court by comparing personally the labels or marks. Rather, the test is one of consumer confusion, in light of the manner in which consumers purchase these products. See, e. g., Northam Warren Corp. v. Universal Cosmetic Co., 18 F.2d 774, 775 (7th Cir. 1927). Plaintiff here has only introduced copies of the two labels. No evidence was introduced to show how consumers purchase these products, to show any consumer association with plaintiff's mark, or to show any actual confusion. However, even in the absence of this type of evidence, the court can proceed to visualize the likelihood of consumer confusion wholly from the similarity of the marks. See, e. g., Pikle-Rite Co. v. Chicago Pickle Co., 171 F. Supp. 671 (N.D.Ill.1959).

I have carefully considered the two marks from the viewpoint of an ordinary consumer, and I find they are not so confusingly similar as to produce any likelihood of consumer confusion.

■ Plaintiff's trademark is "Ye Olde Tavern" written in English script and superimposed upon a representation of a wooden signboard. Defendant's label is "Planters Tavern Nuts" in regular print and with "Planters Tavern" placed upon a sort of signboard with a fanciful border. In terms of emphasis, all of the words in plaintiff's trademark are uniform, while in defendant's label "Planters" and "Nuts" are in larger and bolder print than "Tavern."

■ Plaintiff argues that "Tavern" is the salient part of its mark, and that defendant's use of this word, regardless of what other words defendant uses with it, constitutes infringement. It is possible to infringe a trademark by adopting and using only a "salient part" of it. However, plaintiff has introduced no evidence to demonstrate that consumers actually refer to its product by the name "Tavern" or otherwise to prove that "Tavern" is the salient part of its mark. I do not find that "Tavern" is the salient part of plaintiff's mark. It is the third of three words, and the emphasis of plaintiff's mark would seem to rest more upon the first two words, "Ye" and "Olde," which are uncommon and are associated with the English script in which the whole mark is lettered. Cf. Pikle-Rite Co. v. Chicago Pickle Co., 171 F. Supp. 671, 675 (N.D.Ill.1959). See generally 1 Nims, Unfair Competition and Trade-Marks § 221f, at 680–82 (4th ed. 1947).

■ Similarity is to be judged by the consideration of each mark as a whole. See generally 3 Callmann, Unfair Competition and Trade-Marks § 81.1, at 1378–81 (2d ed. 1950); 1 Nims, Unfair Competition and Trade-Marks § 221e (4th ed. 1947). Thus, in John Morrell & Co. v. Reliable Packing Co., 295 F.2d 314 (7th Cir. 1961), the court, in reversing the trial court finding of infringement, looked to the full labels used by plaintiff and defendant. Plaintiff in that case used "Morrell E-Z Cut Fully Cooked Ham Smoked" whereas defendant used "Thompson Farms Brand Easy-Carve Ham." The plaintiff's registered trademark covered "E-Z Cut." The court held that plaintiff had not carried its burden

of showing likelihood of confusion in that it had always used "Morrell," a well-known name, as part of its label, and defendant had always used its brand name "Thompson Farms Brand," which clearly indicated the source of origin, as a part of its label. In Coca-Cola Co. v. Carlisle Bottling Works, 43 F.2d 101 (E.D.Ky.1929), aff'd 43 F.2d 119 (6th Cir. 1930), the court engaged in a detailed discussion of the whole labels and marks involved, and held that "Roxa Kola" did not infringe plaintiff's "Coca-Cola." The court stated:

"In making the comparison analysis of the two trade-marks into their ultimate elements is discouraged, if not denied. The would-be purchaser does not analyze. The question is how do the two trade-marks appear to him as a whole. * * * In each case it is the tout ensemble that counts. And, in the case of infringement of trade-marks, it would seem that the whole to be taken into consideration, at least so far as appearance is concerned, is not the trade-mark in and of itself, but in its setting and also the dress of the article to which the trade-mark is affixed. The ultimate question is whether there is such similarity that it is calculated to deceive the ordinary purchaser. It is not necessary that there be any evidence of actual deception. But the absence of such evidence is relevant to the question of similarity." 43 F.2d at 109.

Numerous other cases have stated and applied these same principles. See, e. g., Hesmer Foods, Inc. v. Campbell Soup Co., 346 F.2d 356 (7th Cir. 1965); John Morrell & Co. v. Doyle, 97 F.2d 232 (7th Cir. 1938); Hiram Walker & Sons v. Penn-Maryland Corp., 79 F.2d 836 (2d Cir. 1935). Applying these principles to the present suit, it is apparent that defendant's complete label could not be confused with the plaintiff's.

Defendant's label as a whole reads "Planters Tavern Nuts," with emphasis on "Planters" and on the "Mr. Peanut" figure. Defendant has registered trademarks both on "Planters" and on "Mr.

Peanut." Plaintiff has conceded, and evidence at the trial reveals, that Planters is a well-known national brand name for peanuts and other nut products. The lettering of defendant's label is not in script, and the colors are entirely different.

While infringement is not avoided because the infringer uses his own name before the appropriated part of the mark, this fact is relevant to a likelihood of confusion test. See, e. g., Celanese Corp. of America v. E. I. Du Pont De Nemours & Co., 154 F.2d 143 (C.C.P.A.1946). A distinction should be drawn in these cases between situations where the alleged infringer's name is unknown and where it is very well known as denoting a particular brand or source. In the latter case, where the brand name is prominently stressed in the label, there is not likely to be any confusion as to source, which is the essence of trademark infringement. See, e. g., John Morrell & Co. v. Doyle, 97 F.2d 232 (7th Cir. 1938). Defendant's label bearing the well-known brand name of "Planters" falls in this category.

Furthermore, defendant's bags are wholly distinct from plaintiff's in color and form, as well as in the nature of the lettering and in its position on the bags. Dissimilarity in dress is relevant even in trademark infringement cases in applying the likelihood of confusion test. See, e. g., Dwinell-Wright Co. v. National Fruit Product Co., 140 F.2d 618, 623 (1st Cir. 1944); Nehi Corp. v. Mission Dry Corp., 117 F.Supp. 116, 117 (D.Del.1953).

Plaintiff has failed to show any trademark infringement in this case, under either statutory or common law principles.

### III.

Since I have held that there is no trademark infringement in this case, it is unnecessary to rule on defendant's contentions that "tavern" is a generic or descriptive word, not entitled to trademark protection under 15 U.S.C. § 1115(b)(4). However, defendant's evi-

dence of other uses of "tavern" by a number of manufacturers on various products is relevant to the extent of protection plaintiff is entitled to claim. In a field where there are many trademarks containing similar elements, the owner's protection must be strictly limited to his full registered mark. Cf. Hesmer Foods, Inc. v. Campbell Soup Co., 346 F.2d 356 (7th Cir. 1965). See generally 3 Callmann, Unfair Competition and Trade-Marks § 82.1(*l*), at 1507–08 (2d ed. 1950). In this case there was specific evidence that plaintiff knew of other uses of "tavern," including use by Old Tavern Food Products Co. in Wisconsin on cheese products, plaintiff's main product, prior to its registration of "Ye Olde Tavern" in 1957. Plaintiff cannot now seek broad protection for "tavern" in other lines of competition.

## IV.

Plaintiff produced no evidence in support of its claim of unfair competition apart from the evidence already discussed. Plaintiff, having failed to make any showing of "a likelihood of consumer confusion," is in no position to pursue its claim of unfair competition. Where unfair competition is charged, the test of confusion encompasses the whole product and its dress and not just the trademark. As I have already pointed out, the whole dress of defendant's bag is different from plaintiff's in color, in form and in conspicuous use of defendant's name and symbol. In this situation plaintiff would fail as to this portion of its claim even under the lenient rule announced in Stiffel Co. v. Sears, Roebuck & Co., 313 F.2d 115, 118 n. 7 (7th Cir. 1963).[2]

Plaintiff's failure of proof would be even more complete under the more stringent "unfair competition" test announced in the later Seventh Circuit cases of Spangler Candy Co. v. Crystal

Pure Candy Co., 353 F.2d 641, 647–648 (7th Cir. 1965); Aerosol Research Co. v. Scovill Mfg. Co., 334 F.2d 751, 757 (7th Cir. 1964). "Palming off" as decided in these cases requires that the copied feature be nonfunctional and that it have "secondary meaning" in the eyes of the public to the point where they associate the feature with a particular source. See generally Developments—Competitive Torts, 77 Harv.L.Rev. 888, 908–23 (1964). The only allegedly copied feature here was the word "Tavern" in plaintiff's trademark. Plaintiff has not shown in any way that customers associate "Tavern" with its products, or with a particular brand or products. Moreover, it has not shown that defendant had any intent to "palm off" its products as those of the plaintiff, or that this result in fact occurred. Plaintiff's evidence wholly fails to establish its claim of unfair competition.

## V.

Plaintiff further seeks relief for "trademark dilution" and "injury to business reputation" under Ill.Rev.Stat. ch. 140 § 22 (1965). That section authorizes injunctive relief "if there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark * * * notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services * * *."

I have previously held that this statute "only adds to the plaintiff's rights * * * when the parties are not in actual competition." See Spangler Candy Co. v. Crystal Pure Candy Co., 235 F.Supp. 18, 23 (N.D.Ill.1964), aff'd. 353 F.2d 641 (7th Cir. 1965). The statute provides for remedies without the heavy burden of proving confusion in non-competitive situations; in competitive situations confusion can be presumed from substantial similarity in the mar-

2. The Supreme Court in reversing the decision in *Sears* added a lengthy footnote in which it disagreed with the Seventh Circuit's interpretation of Illinois requirements for unfair competition and distin- quished the Illinois cases on which the Seventh Circuit had relied for the broader test of likelihood of confusion. 376 U.S. 225, 227–228 n. 2, 84 S.Ct. 784, 11 L.Ed. 2d 661.

ketplace. See, e. g., Polaroid Corp. v. Polaraid, Inc., 319 F.2d 830, 836–837 (7th Cir. 1963). Since the parties are in competition in this case, and there is no trademark infringement or unfair competition, the statute cannot aid the plaintiff.

However, even if the statute could be applied in competitive as well as in non-competitive situations, or if plaintiff's claim can be restricted to its cheese products, where it does not compete, plaintiff has not made out a cause of action for dilution. The statute requires that the trademark or name be "distinctive," and cases interpreting this requirement have limited relief to situations where the name was original with the plaintiff, where it acquired widespread reputation and good will through plaintiff's efforts, and where the defendant's name or mark was virtually identical. Compare Polariod Corp. v. Polaraid, Inc., 319 F.2d 830 (7th Cir. 1963) with Carter Prods., Inc. v. Fleetwood Co., 333 F.2d 464 (7th Cir. 1964) and with Esquire, Inc. v. Esquire Slipper Mfg. Co., 243 F.2d 540 (1st Cir. 1957). In the present case, plaintiff did not originate the word "tavern" and defendant's label does not otherwise resemble plaintiff's. Moreover, as has been noted previously, since there are many similar trademarks registered and in use, plaintiff must be held strictly to its exact and full mark. The fact that defendant conceded the value of plaintiff's full mark on cheese products in the Chicago area is therefore irrelevant. Similarly, there has been no showing of any "likelihood of injury to business reputation" and plaintiff is not entitled to relief on that basis under the statute.

## VI.

Defendant filed a counterclaim in this suit seeking an injunction and damages for trademark infringement and unfair competition based upon plaintiff's use of the words "Cocktail Treats" on its bags of salted nuts. Defendant has a registered trademark for "Cocktail." (U.S.Reg. No. 658,864). Prior to the trial defendant sought to have the counterclaim dismissed by stipulation, but plaintiff would not concur. Defendant offered no proof in the trial in support of the counterclaim. Plaintiff, however, seeks affirmative relief in the form of cancellation of defendant's trademark based upon alleged fraud in its procurement and abandonment by virtue of a "licensing" agreement with Kelling Nut Company. At the trial, plaintiff introduced evidence relating to defendant's registration of "Cocktail" in 1958, and to a settlement agreement defendant entered into with Kelling Nut Company at that time, permitting Kelling to continue using "Cocktail" on its tree-grown nuts in return for Kelling's withdrawal of its opposition to defendant's registration.

Plaintiff concedes that the counterclaim should be dismissed but contends that it is entitled to the relief of cancellation of defendant's trademark. I disagree.

Under the circumstances shown here, the dismissal of defendant's counterclaim will be with prejudice. Plaintiff will be fully able to continue to use "Cocktail" or "Cocktail Treats" on its bags without interference by defendant. Since no claim is presently being asserted against it, plaintiff has no standing to ask for a cancellation of defendant's trademark. There is no injury. If plaintiff is proceeding on the assumption that it is representing the public in this matter, it should file an appropriate petition for cancellation in the Patent Office under the provisions of 15 U.S.C. § 1064. Even in that proceeding, plaintiff must show likelihood of damage. See, e. g., Land O'Lakes Creameries, Inc. v. Oconomowoc Canning Co., 221 F.Supp. 576 (E.D.Wisc.1963), aff'd 330 F.2d 667 (7th Cir. 1964).

Plaintiff is entitled to no relief under its complaint, and the complaint must be dismissed at plaintiff's costs. Defendant is entitled to no relief under its counterclaim, and the counterclaim must be dismissed at defendant's costs. Defendant will prepare and present a proper order within five days.