The **AMERICAN ANGUS ASSOCIATION,**
Plaintiff,

v.

**SYSCO CORPORATION, Sysco Food Services, Inc., and Bell Sysco Food Services, Inc., Defendants.**

Civ. No. 1:92CV190.

United States District Court,
W.D. North Carolina,
Asheville Division.

Oct. 26, 1992.

Reconsideration Granted in
Part June 11, 1993.

David M. Carter, Carter & Schnedler, Asheville, NC, and Richard T. Rossier, Marc Miller, McLeod, Watkinson & Miller, Washington, DC, for plaintiff.

Steve Rosenblatt, Paula Morris, Rosenblatt & Associates, P.C., Houston, TX, and Joseph P. McGuire, Richard Wood, McGuire, Wood & Bissette, P.A., Asheville, NC, for defendants.

*ORDER*

RICHARD L. VOORHEES, Chief Judge.

**THIS MATTER** came before the Court on the Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction, filed October 15, 1992, with a Verified Complaint for Temporary Restraining Order, Preliminary and Permanent Injunctive Relief and Damages.

This Court gave notice and held a conference in chambers on October 16, 1992, at which meeting all parties were present and represented by counsel. Upon such notice and opportunity to be heard, the Court thereafter issued a Temporary Restraining Order, filed October 16, 1992.

On October 22, 1992, a hearing was conducted on the motion for preliminary injunction, at which time both sides presented witnesses and evidence. In addition, the parties submitted briefs to the Court for consideration. The Court has determined that the Plaintiff is entitled to a preliminary injunction. In accordance with Fed.R.Civ.P. 52(a), the Court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

### A. The Parties:

The Plaintiff is the American Angus Association (American Angus), an Illinois corporation, with its principal place of business in St. Joseph, Missouri. The Certified Angus Beef Program (CAB) is a division of American Angus, and has its principal place of business in West Salem, Ohio.

The Defendant Sysco Corporation (Sysco) is a corporation having its principal place of business in Houston, Texas. Sysco is a food service business which sells meat and other food products to restaurants and institutions. In September, 1992, Sysco launched a new product called "Supreme Angus Beef." Sysco transacts business in western North Carolina through its distributors or affiliates.

Sysco Food Services, Inc. (SFSI) is a subsidiary or affiliate of Sysco also having its principal place of business in Houston, Texas. SFSI also transacts business in western North Carolina.

Bell Sysco Food Services, Inc. (Bell) is a corporation with its principal place of business in Asheville, North Carolina. Bell is a food distributor and is affiliated with or a subsidiary of Sysco.[1]

### B. Development of the Certified Angus Beef Program:

American Angus is an association comprised of approximately 20,000 angus breeders. American Angus owns the registered United States Certification Mark "Certified Angus Beef" which shows the profile of a steer with the word "Certified" overhead and the words "ANGUS BEEF" appearing beneath. Plaintiff's Exhibit 8. As stated on the registration statement, "[t]he mark certifies that meat from Angus Cattle meet applicant's requirements, as approved by the U.S. Department of Agriculture (U.S.D.A.) for marbling, lean color, texture, firmness, overall skeletal characteristics and yield grade." *Id.*

---

1. Although Defendants have not yet answered, no jurisdictional objections have been raised.

American Angus has operated the Certified Angus Beef Program since 1978. The program was developed in conjunction with the U.S.D.A. American Angus established standards for the beef which includes live animal and carcass specifications. The live animal characteristics required by American Angus include: 1) the cattle must be of beef-type breeding; 2) there may be no evidence of dairy-type breeding; 3) there may not be excessive hump on the withers or excessively long ears; 4) the cattle must be 51% solid black; 5) bulls are not accepted in the program. Plaintiff's Exhibit 2. Carcass characteristics required by American Angus include: 1) a marbling score of minimum modest or higher; 2) a lean color, texture, firmness, and overall skeletal characteristics which must meet the requirements for "A" maturity in the U.S. Choice or Prime grade; 3) a yield grade of 3.9 or numerically lower (except that carcasses evaluated after removal of all or part of the kidney, pelvic and heart fat may not have a yield grade higher than 3.5); 4) medium or fine marbling texture. Plaintiff's Exhibit 1. Personnel of the U.S.D.A. monitor the live animal characteristics through continuous U.S.D.A. supervision, ante-mortem lot inspection, and program monitoring. Plaintiff's Exhibit 2. The U.S.D.A. grading service reviews the carcasses of the animals to ascertain compliance with the American Angus Association's requirements.

CAB meat can only be sold by packers, distributors, retailers, or restaurants which have obtained a license from American Angus. Control over use of the registered trademark is therefore exclusively within the power of American Angus.

## C. The Supreme Angus Beef Program:

On September 1, 1992, Sysco began marketing its Supreme Angus Beef program. The obvious intent of this program was to compete with the CAB product. Robert Lorino, product manager for the Supreme Angus Beef line, developed a color brochure to be used by Sysco's sales representatives to pro-

mote the new product.[2] Plaintiff's Exhibit 4. He included the following language in the brochure:

Only the best cuts wear the Supreme Angus Beef Brand. Our program is based on the toughest specifications in the industry in which the beef undergoes THREE inspections, not just two.... These inspections are conducted by not only the USDA, but special SYSCO Quality Assurance inspectors specifically trained to work with Angus Beef. Our inspectors hand-pick yield grade three, A-maturity or better cattle, so only the youngest (no more than 30 months) become SYSCO Supreme Angus Beef. Then it's graded Choice or Prime and *guaranteed Angus Beef by the USDA.*

Plaintiff's Exhibit 4 (emphasis added). The same representation was made on another flyer for use by sales representatives. Plaintiff's Exhibit 5.

The requirements established by Sysco for its Supreme Angus Beef program differ from those established by American Angus. The CAB program will not allow any carcass to show evidence of hemorrahaging or dark cutting characteristics, an examination of fat content is allowed, and the carcass must have medium marbling texture. Other evidence presented tended to show Sysco accepts a lesser percentage of angus breed in its meat used for the program. These requirements *do not appear* in the Supreme Angus Beef program. No evidence was presented as to the source of the angus used by Sysco in its program. However, the packer for the program was identified as Montford of Colorado, Inc.

## D. The Dispute Between the Parties:

During the last week of September, 1992, Tommy Coward prepared the price list for Sysco's Supreme Angus Beef line for distribution to sales representatives. This list was to be the customers' first introduction to this product line. The price list was to be used only for the week of October 5, 1992. Mr. Coward testified that when he prepared the

---

**2.** Sysco apparently refers to its sales representatives as marketing associates. The term "sales representatives" is used in this Order to clarify

that these individuals actually made sales calls on customers or potential customers.

list, he cut out the CAB registered trademark and copied it onto the price list opposite the logo used by Sysco for its Supreme Angus Beef product. He had intended to insert the word "versus" between the two logos; but, pressed for time, he neglected to do so. The flyer was sent to a clerk for copying and mailing on October 1, 1992. The price list was admitted as Plaintiff's Exhibit 9. At the Court's request, Mr. Coward wrote onto the Exhibit the word "versus" at the point at which he had intended it to be placed. *See* Plaintiff's Exhibit 9.

Mr. Coward testified that when he realized the word was missing at about 4:30 PM on October 1, 1992, he immediately retrieved the original and left a message on his voice mail to sales representatives telling them that the word "versus" was omitted and not to use these flyers. He did not, however, withhold the mailing. The flyers had already been assembled for mailing to about 50 or 60 different sales representatives. A total of some 200 flyers were distributed.

Thomas Sparacino is a sales representative for Bell with a territory covering south Asheville and Buncombe County. Mr. Sparacino testified that he left one of the above price lists at the South Side Cafe in Asheville when he was introducing the Supreme Angus Beef program to the restaurant manager, Mr. Carter. This restaurant bought a case of ribeye steaks from Bell the next week. Mr. Sparacino stated that Mr. Carter knew this was not a CAB product. He further testified that when either he or a customer of his uses the term "Certified Angus Beef," he is referring to the CAB product of American Angus.

Daniel Flynn is the product development manager in charge of marketing the Supreme Angus Beef program for Sysco. He testified that on October 2, 1992, he paid a sales call on the Spread Eagle Cafe in Cleveland, Ohio. During this call, he specifically told the restaurant manager that the Supreme Angus program was not the same as the CAB program. Mr. Flynn stated that his call came approximately one week after the sales call made on the restaurant by Dave Miller. Mr. Miller had asked the witness to go back to the restaurant with him because he felt he did not know enough about meat to make the sale. Mr. Miller further admitted to Mr. Flynn that he "might" have told the restaurant manager this was CAB meat. No sale was ever made to this restaurant.

Ron Bagwell is a sales representative for Bell in the Raleigh–Durham–Chapel Hill territory. He made three sales calls on Vinnie's Restaurant in Raleigh, North Carolina. He was trying to introduce the Supreme Angus Beef program and left one of the flyers containing the CAB trademark with the restaurant. He stated that the flyer presented a good opportunity to compare the Supreme Angus product with the CAB product, but acknowledged that no facts were shown to support such a comparison; and that, in the absence of his disclaimer, the Vinnie's customer would have been confused by the presence of the CAB mark on the flyer. He personally distributed two of these flyers. Mr. Bagwell testified he did not receive a voice mail message from Mr. Coward advising him not to use these flyers, but that he was informed of the message. He also spoke with three other sales representatives who did not receive the voice mail message.

Mr. Bagwell stated that, as he has done on the occasion of 300 to 500 other sales calls, he made it clear to the customers up front that the Supreme Angus program is not the CAB program. Mr. Bagwell's testimony corroborates the affidavit of Ann Marco, sworn to October 9, 1992, and filed in support of the motion for a preliminary injunction. Ms. Marco is a sales representative for Southern Foods, Inc., of Greensboro, North Carolina, a licensed distributor for American Angus. She stated that the manager of Vinnie's called to advise her that the flyer had been left there.

Dale Baney also works in the Raleigh territory for Sysco. He paid a sales call on the Angus Barn Restaurant in Raleigh, North Carolina, in order to introduce the Supreme Angus Beef program. He did not recall leaving a copy of the flyer containing the CAB trademark, but did recall leaving a copy of the color brochure. Plaintiff's Exhibit 4. He further stated that he told Mr. Russo of the Angus Barn that he had Supreme Angus

Beef available. No sale was made to this restaurant.

The testimony of Mr. Baney corroborates generally the affidavit of William Therrien, sworn to October 9, 1992, and filed in support of the motion for a preliminary injunction. Mr. Therrien is a sales representative for Southern Foods of Greensboro, North Carolina. He stated in his affidavit that he saw and overheard Mr. Baney making a sales presentation to Mr. Russo of the Angus Barn. However, Mr. Therrien further stated that he heard Mr. Baney tell Mr. Russo that he could ship him CAB product. Ms. Marco corroborated the same statement in her affidavit.

Mr. Baney stated that a chef who uses the words "certified angus beef" would be referring to Plaintiff's product and would know Plaintiff's logo. This witness also relates those words to Plaintiff's product.

Mr. Lorino stated in his testimony that Sysco obtained from the U.S.D.A. a right to use the U.S.D.A. seal on the Supreme Angus Beef product labels. He also testified that he called Mr. Larry Meadows of the U.S.D.A. grading service about the wording contained in the color brochure (Plaintiff's Exhibit 4) and faxed a copy to him. Mr. Meadows advised him "there could be a problem" with the wording "guaranteed Angus Beef by the U.S.D.A." Mr. Meadows suggested alternative wording to read "guaranteed to have Angus beef characteristics by the U.S.D.A." Mr. Lorino testified, "I told Larry I did not want to confuse anyone." He then made a mockup of the brochure with the changes which read: "Guaranteed and graded choice or prime by the U.S.D.A. to meet the requirements of the Supreme Angus Beef Program." Defendant's Exhibit 6. The U.S.D.A. has not given Sysco a final opinion.

Plaintiff's Exhibit 7 is a letter to Mick Colvin, Executive Director of American Angus, from Barry Carpenter, Deputy Director of the Livestock and Seed Division of the U.S.D.A. Mr. Carpenter advises that as of August 28, 1992, Sysco had not received certification for the Supreme Angus Beef program. Plaintiff's Exhibit 7. Also included in Exhibit 7 is a September 24, 1992, letter from Ashland Clemons, Director of the Food Labeling Division of the U.S.D.A., to the president of Monfort of Colorado, Inc. Mr. Clemons states in this letter: "USDA does not, nor can it, guarantee that the beef being sold is 'Angus Beef.' Please take steps to correct your advertising by removing the statement 'Guaranteed Angus Beef by the USDA'". Plaintiff's Exhibit 7.

Plaintiff seeks a preliminary injunction to prevent Defendants from infringing the registered Certification Mark and from making other false or misleading statements in connection with its marketing of the Supreme Angus Beef program, including representations that it is "Certified Angus Beef," or the same as "Certified Angus Beef" and that it is "guaranteed angus beef by the U.S.D.A."

Defendants claim Plaintiff is not entitled to any protection of the mark "Certified Angus Beef" and that they are entitled to fair use of that mark. Defendants apparently concede they may not use the registered Certification Mark as their own. Defense counsel argued to the Court that since an honest mistake was made in the creation and distribution of the price list containing the CAB mark, no injunction is necessary. Defense counsel also argue for vacatur of the temporary restraining order issued by this Court for lack of specificity, also claiming the Order requires the divulgence of trade secrets.

## II. CONCLUSIONS OF LAW

The Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338 and has personal jurisdiction over the parties. *Four Seasons Hotels Ltd. v. Koury Corp.*, 776 F.Supp. 240 (E.D.N.C. 1991). Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2). *Id.*

The Court will first address procedural objections raised by the defendants. Defense counsel argues that paragraphs 2 and 8 of the Temporary Restraining Order fail to describe in reasonable detail the act or acts to be restrained, in violation of Fed.R.Civ.P. 65. That Rule provides in pertinent part:

Every order granting an injunction and every restraining order shall ... be specific in terms; shall describe in reasonable

detail ... the act or acts sought to be restrained....

Fed.R.Civ.P. 65(d).

■ This so-called "notice" provision of the rule is meant to insure that those against whom the injunction is issued have "fair and precisely drawn notice of what the injunction actually prohibits." *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665 (8th Cir.1987). However, these statutory requirements are not controlling where there has been an agreement among counsel as to the language of the order. *Brumby Metals, Inc. v. Bargen*, 275 F.2d 46 (7th Cir.1960); *United States v. McAndrew*, 480 F.Supp. 1189 (E.D.Va.1979) (*followed by Environmental Defense Fund, Inc. v. Lamphier*, 714 F.2d 331 (4th Cir.1983)).

■ Prior to the issuance of the Temporary Restraining Order herein, the Court conducted a hearing in chambers at which counsel and the parties were present. Defense counsel advised the Court that Defendants consented to the wording of the Order with the exception of paragraph 5. At that time, counsel devised language including that as to which satisfied all parties. The revised order was submitted to the Court with the representation that all parties consented to its wording. On this basis alone, this Court finds that Defendants objections are untimely and invalid.

■ On a motion for a temporary restraining order, the Court acts to preserve the status quo until the parties may be heard on a motion for the preliminary injunction. *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78 (3d Cir.1982). The degree of specificity required will have a direct relation to the subject matter involved. *Id.* at 83; *Keyes v. School Dist. No. 1*, 895 F.2d 659

(10th Cir.1990), *cert. denied*, 498 U.S. 1082, 111 S.Ct. 951, 112 L.Ed.2d 1040 (1991); *see also Federal Deposit Ins. Corp. v. Jones*, 846 F.2d 221 (4th Cir.1988) (upheld the issuance of a preliminary injunction from the bench without the entry of a written order setting forth the findings of fact and conclusions of law.) Reading paragraphs 2 and 8 within the context of the entire order eliminates any vagueness which defense counsel may observe. *Brumby Metals*, 275 F.2d at 49. Moreover, any ambiguity will be resolved in the favor of the Defendants. *Keyes*, 895 F.2d at 669. Injunctions should not be set aside unless "so vague that they have no reasonably specific meaning." *Id.* at 669.[3] The Court finds the wording of the Temporary Restraining Order meets the standards of Rule 65(d).

Defense counsel also argue that the Temporary Restraining Order requires Defendants to divulge trade secrets. The Order requires Defendants to notify "all customers to which literature or sales material concerning the 'Supreme' angus beef product has been distributed or from which orders for said product have been solicited, of the terms of this order." Temporary Restraining Order, filed October 16, 1992 at 4. It also requires Defendants to file with the Court and serve on Plaintiff's counsel "a report in writing and under oath setting forth in detail the manner and form in which defendants have complied with this restraining order." *Id.* The Order does not require Defendants to disclose the names of their customers. Moreover, defense counsel consented to this portion of the Order prior to its entry. As seen from Defendants' brief, they are aware they have the right and opportunity to request modification of this provision.

---

3. The relevant ordering paragraphs restrain the defendants for a period not to exceed ten days from the following:

 1. From using, displaying, copying or making any other use of the registered Certification Mark of American Angus Association for "Certified Angus Beef," Reg. Nó. 1,235,505;

 2. From infringing on plaintiff's rights in its federally registered mark;

 3. From representing that defendants' angus beef product is "Certified Angus Beef" or the same as "Certified Angus Beef" or otherwise

using "Certified Angus Beef" in connection with the sale of their products;

 7. From using any reproduction, counterfeit, copy, or colorable imitation of plaintiff's mark in connection with the publicity, promotion, sale or advertising of goods sold by defendants in the United States;

 8. From otherwise unfairly competing with plaintiff....

Temporary Restraining Order, filed October 16, 1992 at 2–3.

■ At the hearing, defense counsel strenuously objected to the admission into evidence of certain affidavits submitted by Plaintiff as well as certain testimony on hearsay grounds. This Court overruled such objections, citing the urgent nature of preliminary injunction proceedings and advising the parties the hearing was not being conducted as a full trial.

First, we note that a preliminary injunction proceeding is not subject to jury trial procedures:

> [A] preliminary injunction is customarily granted on the basis of procedures that are less formal and on evidence that is less complete than a trial on the merits. A party thus is not required to prove his case in full at a preliminary injunction hearing.

*University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981).

An additional reason for some leniency in the preliminary injunction stage is that it is used when quick action is necessary to prevent irreparable harm. A leading commentator explains:

> [I]nasmuch as the grant of preliminary injunction is discretionary, the trial court should be allowed to give even inadmissible evidence some weight when it is thought advisable to do so in order to serve the primary purpose of preventing irreparable harm before a trial can be held....

11 C. Wright & A. Miller, *Federal Practice & Procedure,* § 2949 at 471.

The First Circuit in *Asseo v. Pan American Grain Co., Inc.,* 805 F.2d 23 (1986) recognized the propriety of hearsay evidence in preliminary injunctive proceedings:

> Affidavits and other hearsay materials are often received in preliminary injunction proceedings. The dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding.

*Federal Savings & Loan Insurance Corp. v. Dixon,* 835 F.2d 554, 558 (5th Cir.1987).

■ Weighing all the factors involved here, and conceding without deciding that certain evidence offered was objectionable as hearsay, the Court found the use of affidavits and other hearsay evidence was appropriate. This is especially so since defense counsel took advantage of the Court's ruling in this regard in the use of defense witnesses and exhibits. Defendants attempted to depose employees of the U.S.D.A. prior to the hearing, but to no avail. This Court allowed the testimony of Mr. Lorino concerning what he had been told by U.S.D.A. employees. Hearsay evidence may be considered in a preliminary injunction hearing. *SEC v. Cherif,* 933 F.2d 403 (7th Cir.1991), n. 8, *cert. denied,* —— U.S. ——, 112 S.Ct. 966, 117 L.Ed.2d 131 (1992); *Massachusetts Mut. Life Ins. Co. v. Associated Dry Goods Corp.,* 786 F.Supp. 1403 (N.D.Ind.1992), n. 5; *Delman Fabrics, Inc. v. Holland Fabrics, Inc.,* Copy.L.Rep. (CCH) P25,663, 1984 WL 367 (S.D.N.Y.1984).

The Court will now address the issues concerning trademark infringement and unfair competition. In ruling on a hearing for a preliminary injunction, the Court should consider four factors: 1) plaintiff's likelihood of success; 2) whether plaintiff will suffer irreparable harm; 3) the injury inflicted on defendant if the injunction is granted; and 4) the public interest. *Nabisco Brands, Inc. v. Conusa Corp.,* 722 F.Supp. 1287 (M.D.N.C.), *aff'd,* 892 F.2d 74 (4th Cir.1989).

■ Plaintiff seeks a preliminary injunction to prevent Defendants from infringing the registered Certification Mark of American Angus' Certified Angus Beef Program. Plaintiff's Exhibit 8. The issuance of a trademark is prima facie evidence of its validity and the ownership thereof. 15 U.S.C. § 1115(a). This issuance insures the registrant's exclusive right to use the mark in commerce or in connection with goods. *Id.* A registered mark which has been "in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable[.]" *Four Seasons Hotels,* 776 F.Supp. at 246; 15 U.S.C. § 1065. The registration certificate of an incontestable mark is conclusive evidence of the owner's exclusive right to use

it. *Id.;* 15 U.S.C. § 1115(b). This Court finds from the evidence presented that the Plaintiff's registered certification mark (Plaintiff's Exhibit 8) meets the above characteristics and is conclusive evidence of Plaintiff's right to use it.

Infringement of a registered trademark is defined as the use in commerce of "any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Plaintiff objects to the use by Defendants of its mark on price lists for the Supreme Angus Beef product. Defendants argue that the use of this mark occurred as a result of a mistake which they assure the Court will not be repeated. Therefore, Defendants claim an injunction is unnecessary, citing *United Farm Workers Nat. Union v. Sloan's Supermarkets, Inc.*, 352 F.Supp. 1025 (S.D.N.Y. 1972).

The court in *United Farm Workers* actually held that under the facts there presented, an injunction was unnecessary to stabilize the situation. Indeed, the court found an injunction would upset the status quo in the environment of a heated strike by the labor union. *Id.* at 1029. The court also noted that a preliminary injunction is not precluded because the conduct complained of has stopped or was a mistake or because the defendant "has sworn it will not happen again." *Id.* This Court finds that Defendants' assurances are not sufficient to "stabilize the situation" in view of the argument of defense counsel in the Bench Brief and at the hearing that Defendants have a right to fair use of the registered mark. Moreover, Defendants' allegations that the infringing conduct has stopped do not preclude the issuance of a preliminary injunction. *Crime Control, Inc. v. Crime Control, Inc.*, 624 F.Supp. 579 (D.D.C.1984).

This Court finds that the unqualified use of the CAB registered mark on price lists containing the Supreme Angus Beef logo, as was done herein, creates a likelihood of confusion for the consumer as to whether the product being sold is beef from the CAB program certified by American Angus or from the Supreme Angus Beef program allegedly certified by Sysco. *Calvin Klein Cosmetics*, 824 F.2d at 668. Indeed, the price lists distributed could give the impression that Supreme Angus Beef is a new product line of American Angus. In reaching this conclusion, the Court has considered that Defendants' own sales representatives acknowledged the strength of Plaintiff's registered mark. The specialized meat products being sold are clearly similar, and it appears unlikely to the Court that the ultimate purchasers would be aware of the different certification requirements of each program. There is also a similarity between sales methods. The Court notes that at this juncture, there was limited evidence of actual confusion. However, it is likelihood of confusion which is the determinative factor. *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104 (4th Cir.1991). Defendants' intent to infringe has further been considered. While Mr. Coward testified that he intended to engage in comparison advertising by inserting the word "versus" between the marks, there was minimal follow-up to "repair the damage" once the flyers had been assembled. The other factors for consideration in granting a preliminary injunction are discussed below.

Defendants argue that they are entitled to use the registered certification mark truthfully to compare products. That may be the case, but this matter is presently before the Court on a motion for preliminary injunction, not declaratory judgment. To grant the Defendants' proposition, the Court would have to speculate as to what form such advertising would take. Rather than do that, the Court will deal in this Order only with prohibition of certain conduct shown to have been actually engaged in by Defendants. *Four Seasons Hotels*, 776 F.Supp. at 248. The Court does note that:

> The Lanham Act thus does not prohibit all unauthorized use of a trademark. "Trademarks of a rival company can be used in competitive advertising, so long as the advertising 'does not contain misrepresentations or create a reasonable likelihood that purchasers will be confused as to the

source, identity, or sponsorship of the advertiser's product.'"

*Weight Watchers Int'l., Inc. v. Stouffer Corp.,* 744 F.Supp. 1259, 1269 (S.D.N.Y.1990) (citations omitted).

The Court finds that the use of price lists containing both logos, even with the word "versus" inserted between them, and without more, would create a reasonable likelihood of confusion as to source, identity or sponsorship. *Calvin Klein Cosmetics,* 824 F.2d at 668. The use of the word "versus" alone on price sheets containing only prices for Sysco's Supreme Angus Beef product would not sufficiently identify the source of each product. *Id.* There would remain a reasonable, indeed, a substantial likelihood of confusion as to source, identity or sponsorship. *Id.* Moreover, the Court will not undertake, on this motion for a preliminary injunction, to advise the parties as to what format comparative advertising might appropriately take.

▮ Defendants next argument is that Plaintiff is not entitled to any protection against infringement of the term "Certified Angus Beef" because this is descriptive only and has acquired no secondary meaning. The words "Certified Angus Beef" are not a part of the registered certification mark of American Angus. Plaintiff has not objected to Defendants characterization of the term as descriptive. However, "[i]f the mark 'imparts information directly, it is descriptive.'" *Worthington Foods, Inc. v. Kellogg Co.,* 732 F.Supp. 1417, 1433 (S.D.Ohio 1990) (quoting *Burke–Parsons–Bowlby Corp. v. Appalachian Log Homes, Inc.,* 871 F.2d 590, 594 (6th Cir.1989)). Descriptive marks convey characteristics or qualities of the product. *Id.* The Supreme Court has recently determined that an unregistered mark is entitled to the protections available under the Lanham Act if it has acquired distinctiveness, even though it is descriptive. *Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). A descriptive mark may become eligible for such protection if it has become so distinctive of the goods in commerce that it has acquired secondary meaning. *Id.*

▮ Whether or not a term has acquired secondary meaning is a question of fact. *Investacorp, Inc. v. Arabian Invest. Banking Corp.,* 931 F.2d 1519 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991). Thus, the Court's finding in this regard shall be limited to the terms and provisions of this preliminary injunction. The Court notes, however, that Defendants raised the issue of characterization of the term and seek to use it in advertising. It is appropriate for the Court to make such a determination on a motion for a preliminary injunction. *Worthington Foods,* 732 F.Supp. at 1433.

A mark acquires secondary meaning when "it [is] shown that the *primary* significance of the term in the minds of the consuming public is not the product but the producer." Thus, the crux of the doctrine of secondary meaning "is that the mark comes to identify not only the goods but the source of those goods," even though the relevant consuming public might not know the name of the producer.... [S]omeone seeking to establish secondary meaning must show that the purchasing public associates goods designated by a particular mark with but a single—although anonymous—source.

*Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1221 (2d Cir.1987) (citations omitted) (emphasis in original).

▮ Some of the factors which may be considered in this determination include the length and manner of the use of the term, the extent of advertising and promotion, efforts made to promote a conscious connection in the consumer's mind between the term and the source, and sales success. *Investacorp,* 931 F.2d at 1525; *Centaur Communications,* 830 F.2d at 1222. Not every element need be proven. *Id.* Another means of acquiring secondary meaning occurs when the appropriation of the mark confers subsequent significance to the previous meaning of the term, that is, the term through use became uniquely associated with a single source. *PaperCutter, Inc. v. Fay's Drug Co.,* 900 F.2d 558 (2d Cir.1990).

The Court determines for the purposes of this preliminary injunction only that the term "Certified Angus Beef" has acquired secondary meaning. Mr. Colvin, Executive Director of American Angus, testified to the extensive advertising and promotion his Association has done since 1978. Defendants' own witnesses testified that everyone in the industry knew that the term referred to angus beef sold by the American Angus. It thus appears the term has become uniquely associated with the American Angus Certified Angus Beef program.

Defendants argue they should be able to use the phrase in question so long as their product is "certified" for any purpose. Even if such a certification existed, making the phrase "certified angus beef" arguably truthful as applied to Defendants' product, Defendants miss the point. It is the secondary meaning of the phrase (aligning it with Plaintiff's product) which makes its use in Defendants' ads impermissible.

However, in order for the term to be entitled to protection, there must be a determination of likelihood of confusion. 15 U.S.C. § 1125(a). The Court finds from the evidence presented at the hearing that such a likelihood does exist. Plaintiff and Defendants are engaged in direct competition involving the sale of angus beef product. Each of them claims to have a program pursuant to which the U.S.D.A. certifies that their product meets certain specifications.[4] The products are similar—top quality choice cuts of beef. The targeted market is the same for both products. If Defendants advertise their product as Supreme Certified Angus Beef, there is almost a certainty that customers will be led to believe CAB has introduced a new line. Indeed, evidence was presented that even one of Defendants' salesmen used the term "Certified Angus Beef" in conjunction with the Sysco product, because he was unfamiliar with meat. Accepting that this confusion on his part was genuine, it proves the Plaintiff's point. Even if the Plaintiff's contention that the Sysco salesmen were deliberately trying to deceive their customers is

accepted, confusion is again established. The Court will address the other factors to be considered below.

■ Defendants' last argument is that they should be allowed to advertise their produce as "Guaranteed angus beef by the U.S.D.A.," or at least that they should not be enjoined from doing so. The use of any false or misleading description or representation of fact which is likely to deceive as to sponsorship or approval is a violation of the Lanham Act. 15 U.S.C. § 1125(a). The Defendants' own evidence showed that Sysco had been warned by the U.S.D.A. that there was "a problem" with advertising "Guaranteed angus beef by the U.S.D.A." Defendants admit that as of the time of the hearing, they had not received such a guarantee. Moreover, the fact that Defendants may have been negotiating for such approval is irrelevant. Their advertisements contained a false statement which materially misrepresented approval of their product.

■ The Court has found that the use of the above advertising methods will result in the likelihood of confusion in the consumers' minds as to the source, origin, sponsorship and approval of the product. In reaching this conclusion, the Court has considered the strength of Plaintiff's registered mark and the term "Certified Angus Beef," the similarity of the products and the logos, evidence of actual confusion, marketing methods, knowledge of the consuming public and Defendants' intentions. *Worthington Foods*, 732 F.Supp. at 1432. Since likelihood of confusion has been established, likelihood of success on the merits and the risk of irreparable harm follow as a matter of course. *Nabisco Brands*, 722 F.Supp. at 1290. On the issue of injury to the Defendants, the Court notes the Supreme Angus Beef program was launched just this past month, although it had been in gestation for some time. Defendants have already agreed they will not use the registered certification mark as their own and they have submitted a modified color

---

4. The Court notes conflicting evidence on this score. Mr. Lorino testified Sysco has a certified program with U.S.D.A. Plaintiff admitted a letter from Barry Carpenter of the U.S.D.A. showing that at the end of August, 1992, Sysco did not have a certified program. Plaintiff's Exhibit 7. This conflict only tends to increase the likelihood of confusion.

brochure to the U.S.D.A. for approval. Altering their advertising to comply with this Order should not impose substantial injury and will prevent public confusion. The Court finds the issuance of the preliminary injunction will maintain the status quo between the parties. Most importantly, it will prevent unnecessary public confusion concerning the product.

### III. ORDER

Based upon the verified complaint and attached exhibits, the application for a temporary restraining order and preliminary injunction, and the affidavits submitted in support thereof, the briefs and responding papers filed herein, oral argument of counsel and the evidence adduced at the hearing of this matter, and for the reasons stated herein,

**IT IS, THEREFORE, ORDERED** that the Plaintiff's motion for a preliminary injunction is hereby **GRANTED** pursuant to the provisions of Fed.R.Civ.P. 65; and

**IT IS FURTHER ORDERED** that Defendants, their agents, subsidiaries, affiliates, representatives, employees, officers and all other persons in active concert and participation with them are hereby **ENJOINED** as follows pending final determination of this action:

1. From using, displaying, copying or making any other unauthorized use of the registered Certification Mark of American Angus Association for "Certified Angus Beef," Reg. No. 1,235,505, as their own;

2. From using any logo, tradename, or trademark which may be calculated to represent falsely or which has the effect of representing falsely that the products of Defendants are sponsored by, authorized by, or in any manner associated with Plaintiff's product, the Certified Angus Beef program or the American Angus Association;

3. From representing that Defendants' angus beef product is "Certified Angus Beef" or the same as "Certified Angus Beef;"

4. From making any false claim or statement concerning Defendants' Supreme Angus Beef that suggests any relationship between Supreme Angus Beef and Certified Angus Beef;

5. From making any claim that Defendants' Supreme Angus Beef is "Guaranteed angus beef by the U.S.D.A.," or any other words or combination thereof that indicate the product has been guaranteed by the U.S.D.A. to be angus beef; with the exception that Defendants shall not be enjoined from using such words on packaging containing perishable goods or on the perishable goods themselves provided that those goods shall have been packaged before or within five days after entry of the Temporary Restraining Order in this cause; and with the further exception that Defendants may make use of such approvals as are hereafter granted to the Supreme Angus Beef program by the U.S.D.A.;

6. From falsely representing themselves as being connected with, sponsored by, associated with, or approved by Plaintiff or falsely representing that Defendants' angus beef products have been certified or approved by Plaintiff;

7. From using Plaintiff's registered certification mark in connection with publicity, promotion, sale or advertising of Defendants' goods, including comparative advertising, by simply inserting the word "versus" between the Supreme Angus Beef logo and Plaintiff's registered certification mark on price lists containing prices for Defendants' product;

8. From affixing, applying, annexing or using in connection the sale of any goods a false description or representation including words or other symbols tending to describe falsely or represent such goods as being those of Plaintiff and from offering such goods in commerce in the United States; and

9. From using any mark or trade name in connection with the sale of any goods which may be calculated to represent falsely such goods as being connected with, approved by, or sponsored by, Plaintiff; and

**IT IS FURTHER ORDERED** that Defendants shall notify all customers to which literature or sales material concerning the Supreme Angus Beef product in violation of the terms of this Order has been distributed or from which orders for said product have been solicited, of the terms of this order, but,

notification shall not occur by distribution of copies of this Order. The parties shall submit within ten days proposed notifications to be used for this purpose. The Court will consider contentions by the Defendants presented by affidavit as to whether notifications already given in compliance with the Temporary Restraining Order herein are sufficient; and

**IT IS FURTHER ORDERED** that Defendants shall file with this Court and serve on counsel for Plaintiff, pursuant to 15 U.S.C. § 1116, within thirty (30) days of the service on counsel of the final notification Order referred to above, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with this Order; and

**IT IS FURTHER ORDERED** that the copy of the report served on Plaintiff may contain redactions of the names of Defendants' customers and the original filed with the Court shall be filed under seal pending further Order of this Court; and

**IT IS FURTHER ORDERED** that the bond of Plaintiff as established in the Temporary Restraining Order shall remain in effect; and

**IT IS FURTHER ORDERED** that this Order supersedes the Temporary Restraining Order filed on October 16, 1992.

## ORDER ON RECONSIDERATION

**THIS MATTER** is before the Court on the following pleadings: (1) Plaintiff's motion for reconsideration of this Court's Order of November 25, 1992 (which concerned compliance with notification provisions of the preliminary injunction entered on October 26, 1992), filed December 1, 1992; (2) Defendants' response to the motion for reconsideration, filed December 3, 1992; (3) Defendants' correction to the pleading under (2) above, filed December 4, 1992; (4) Plaintiff's reply to Defendants' opposition to the motion for reconsideration, filed December 9, 1992; (5) Defendant Sysco Corporation's ("Sysco") motion to suspend a ruling on the motion for

reconsideration and requesting time to file a motion to vacate portions of the preliminary injunction, filed December 11, 1992; (6) Plaintiff's opposition to the motion under (5) above, filed December 18, 1992, and Plaintiff's transmittal of attachment omitted from this pleading, filed December 21, 1992; (7) Sysco's motion to vacate the preliminary injunction, filed December 22, 1992; and (8) Plaintiff's opposition to the motion to vacate, filed January 4, 1993.

On May 3, 1993, the Court received a letter from defense counsel setting forth additional law. Plaintiff's counsel responded on May 7, 1993. Although the Court set a cutoff date as of January 4, 1993, to limit new filings, these letters are considered below.

The Court construes Sysco's motion to vacate as a Fed.R.Civ.P. 60(b) motion because it is based on "newly discovered evidence." Interlocutory orders may not be attacked by the use of Rule 60(b) and this procedure is not intended to be a substitute for an appeal. Shepard's, *Motions in Federal Court*, § 9.64 at 130 (2d ed. 1991). Sysco's motion to vacate the preliminary injunction will be denied. Defendants will provide notice according to the terms of the preliminary injunction pursuant to the form set forth below.

## I. SYSCO'S MOTION TO VACATE THE PRELIMINARY INJUNCTION

On October 26, 1992, this Court entered a preliminary injunction against the Defendants barring the unauthorized use of Plaintiff's registered certification mark, and limiting, during the pendency of the action, certain advertising techniques which are substantially likely to create public confusion.[1] Sysco has moved to vacate the injunction, claiming that prior efforts by The American Angus Association ("American Angus") to register the phrase "Certified Angus Beef" as a certification mark have been denied by the United States Patent and Trademark Office. Sysco argues this Court should give "great weight" to those determinations in the

---

**1.** A temporary restraining order was initially issued by the Court on October 16, 1992, by con-

sent of the parties.

pending litigation. Sysco further complains that the injunction bars Defendants from advertising that their product is certified by the United States Department of Agriculture ("U.S.D.A.").

## A. U.S.D.A. Approval

The preliminary injunction at no point bars Defendants from correctly stating U.S.D.A. approval. The injunction states Defendants may not claim its Supreme Angus Beef product is "Guaranteed angus beef by the U.S.D.A.," but, Defendant may use such approvals as are granted to the Supreme Angus Beef program by the U.S.D.A. *See* Order, filed October 26, 1992 at 820.

 Defendants claim the U.S.D.A. "sent Sysco a letter indicating that it did not object to Sysco's use of the term 'Certified' in connection with Sysco's 'Supreme Angus Beef Program'." Sysco Corporation's Motion to Vacate the Preliminary Injunction, filed December 22, 1992 at 5 ["Motion to Vacate"]. While the content of the letter indicates the "Supreme Angus Beef" program is being certified by the U.S.D.A., at no point are Defendants authorized to use the term "Certified Angus Beef" to describe their program. The contents of the letter in no manner require modification of the preliminary injunction.

The letter, attached as Exhibit A to the motion, was written by Mr. Larry Meadows, Chief of the Meat Grading and Certification Branch, Livestock and Seed Division, of the U.S.D.A., to Mr. Rick Ewert of Sysco, under date of December 4, 1992. Mr. Meadows writes that the U.S.D.A. "does not approve labels, advertisements, or any other written material.... " Exhibit A at 1, *attached to* Motion to Vacate. He also advises Ewert that "our comments should not be construed in any way as official U.S.D.A. approval of the draft brochure...." *Id.* It appears Defendants now attempt to do so. Meadows further states that the U.S.D.A. *does not guarantee* that the livestock or carcass beef

offered for certification meets Supreme Angus Beef program requirements. *Id.* (emphasis added). Mr. Meadows explains the U.S.D.A. may only "certify" that the cattle meet the requirements or specifications of certain schedules of the Supreme Angus Beef program. It has never been contended that Defendants may not use the word "certified" in conjunction with its Supreme Angus Beef program. The only issue is the use of the phrase "Certified Angus Beef" to describe the Supreme Angus Beef product.

The importance of this distinction is seen in Mr. Meadows' letter in which he clarifies that the requirements for the beef in the Supreme Angus Beef program do not include predominantly Angus breeding,[2] and advises Defendants they should remove the following sentence from their brochure: "Supreme Angus Beef specs require all beef to be predominantly Angus breed characteristics." *Id.* Moreover, in his letter, Mr. Meadows informs Defendants several times that the wording of their brochure must be changed "to accurately reflect the program requirements," and he states twice that the U.S.D.A. does not "guarantee" anything about the product. *Id.*

The information contained in the Meadows' letter reiterates that the advertising sought to be used by Defendants is misleading and confusing. Defendants seek permission to use the term "Certified Angus Beef" in advertising and marketing on the basis of this letter. The Court finds that, contrary to Defendants' assertions, the letter from Larry Meadows supports the previous ruling of likelihood of confusion between the two products. That ruling does not prohibit Defendants from the use of the word "certified" in connection with its program. Nor does it prohibit Defendants from accurately stating U.S.D.A. approval. However, the preliminary injunction does prohibit Defendants from describing their product as being "U.S.D.A. guaranteed angus beef" and from

---

2. Evidence presented at the preliminary hearing tended to show the American Angus Certified Angus Beef program requires predominantly angus breed. Transcript of Motion Hearing, filed November 13, 1992 at 20–21 ["Transcript"], Plaintiff's Exhibit 2. The Supreme Angus Beef specifications admitted into evidence at the hearing were dated September, 1992. *See* Plaintiff's Exhibit 3. Mr. Ewert refers to specifications dated October, 1992, and November, 1992, which are not before the Court.

using the logo "Certified Angus Beef" to describe their product.

## B. Effect of Prior Determination by Trademark Trial and Appeal Board

At the heart of this lawsuit is the Defendants' desire to use the phrase "Certified Angus Beef." [3] Defendants' witnesses at the preliminary injunction hearing established the likelihood of public confusion which would arise if Defendants use this term to describe their Supreme Angus Beef product. 15 U.S.C. § 1125(a)(1). The targeted customers of both products are, for the most part, institutional customers such as restaurants. Employees of the Defendants testified that throughout the industry, the term "Certified Angus Beef" is identified with and known to refer to the American Angus program. *See, e.g.,* Transcript at 117–18 (Testimony of Thomas Sparacino) and at 136–37 (Testimony of Dale Baney) (Sales Representatives for Bell Sysco who both testified that when a chef says, "I use certified angus beef," he means the Plaintiff's product). As noted in the Order granting the preliminary injunction, Daniel Flynn, product development manager for Sysco, testified that another Sysco salesman "might have said" to a customer that Sysco now offered Certified Angus Beef. Transcript at 122–23. *See* Affidavit of Peter Johnson, filed October 15, 1992 (the customer in question, who stated Miller told him several times that Sysco now offered Certified Angus Beef). Plaintiff presented affidavits from sales representatives of the Certified Angus Beef product who stated they overheard Sysco's salesmen tell customers they could now ship Certified Angus Beef product. *See* Affidavits of William Therrien and Ann Marco, filed October 15, 1992. *See also,* Affidavit of Charles Heaton, filed October 15, 1992.

Defense counsel argued at the hearing on the motion for a preliminary injunction that the term was descriptive but had not acquired secondary meaning. Transcript at 174; *see also,* Defendants' Bench Brief, filed October 22, 1992. The Court held the term is descriptive and has acquired secondary meaning and found a likelihood of public confusion.

Defendants now argue the phrase is generic because of previous rulings of the Trademark Trial and Appeal Board ["TTAB"] to which this Court should give "great weight." The issue here is what deference this Court should give a ruling denying registration which was made over two years ago by the TTAB on an ex parte application.

The history of the proceedings before the United States Patent and Trademark Office is briefly as follows. In March, 1985, American Angus applied for registration as a certification mark of the term "Certified Angus Beef" on the Principal Register. Exhibit B *attached to* Motion to Vacate. Registration was denied in May, 1985, because the "mark, when applied to the goods, is considered to be merely descriptive thereof." Exhibit C at 1 *attached to* Motion to Vacate. In November, 1985, American Angus asked for reconsideration of the ruling. Exhibit D *attached to* Motion to Vacate. In October, 1986, upon reconsideration, the examining attorney denied registration stating, "[t]he mark is believed to be incapable of acquiring distinctiveness . . . ." Exhibit E *attached to* Motion to Vacate. In November, 1987, American Angus requested the mark to be registered on the Supplemental Register. Exhibit F *attached to* Motion to Vacate. This request was refused in February, 1988, when the examining attorney opined the mark was generic. Exhibit G *attached to* Motion to Vacate. Thereafter, American Angus again requested registration on the Principal Register.

In September, 1990, the TTAB again refused registration on the Principal Register, stating, "[t]he Examining Attorney has refused registration . . . on the basis that the words sought to be registered are so highly descriptive in nature that the asserted certification mark is not capable of functioning as a mark . . . and that the evidence of acquired distinctiveness is insufficient to overcome the refusal. . . . We affirm." Exhibit I at 3

---

**3.** Paragraphs 52–59 of the verified Complaint deal with infringement of the unprotected mark "Certified Angus Beef." At the hearing, Defen-dants specifically requested a ruling on this issue. Transcript at 173–75.

*attached to* Motion to Vacate. The Board also stated:

> With respect to the question of acquired distinctiveness, the former Examining Attorney has conceded ... while maintaining that the phrase is not capable of functioning as a trademark, if the asserted mark were capable of becoming a trademark, then the evidence submitted by applicant would be sufficient to establish de facto secondary meaning.... These words cannot become distinctive of applicant's certified meat and must remain in the public domain.

*Id.* at 6–7. The Board went on to hold that the refusal was based on a finding that the term is generic. *Id.* at 9.

■■■ Congress has limited "the res judicata or collateral estoppel effect to be given the decisions of the TTAB because the Lanham Act provides for extensive judicial involvement in the registration and protection of trademarks.... [A] court hearing an infringement claim is not legally and conclusively bound by a prior decision of the TTAB regarding the same trademark dispute." *Freedom Sav. & Loan Asso. v. Way,* 757 F.2d 1176, 1180 (11th Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985). Decisions of the Board concerning whether a mark is to be registered may not interfere with the common law right to use the mark in any event. McCarthy, *Trademarks and Unfair Competition,* § 32:30 at 734–735 (2d ed. 1984) (citing *Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812 (1st Cir.1987) in the Supplement, 1991). In fact, in ex parte matters, the Supreme Court has stated that a determination by the courts of appeal on an appeal from the TTAB "that an applicant is entitled to a patent or trademark registration does not preclude a contrary result in a subsequent infringement suit, any more than the granting of a trademark registration or a patent by the Patent and Trademark Office has that effect." McCarthy, *Trademarks and Unfair Compe-*

*tition,* § 32:30 at 735 (2d ed.) (citing *Brenner v. Manson,* 383 U.S. 519, 86 S.Ct. 1033, 16 L.Ed.2d 69 (1966)). Decisions in ex parte cases do not preclude a later inter partes litigation of the same issues in the Court of Customs and Patent Appeals. *Id.*

> Although the PTO Examiners ostensibly represent the public at large, this cannot lead one to the result that the public at large has thereby lost its right to relitigate issues determined.

*Id.* at 736.

■■■ . Defendants cite *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522 (4th Cir.1984), to support their argument that "great weight" should be given to the finding of the TTAB. The court there noted that registration of a mark established plaintiff's *prima facie* case and shifted the burden of proof to defendant to show sufficient evidence to rebut plaintiff's presumptive right to use the mark. *Id.* at 1529, 1534. However, contrary to Defendants' argument, the Fourth Circuit reversed the district court's finding of no likelihood of confusion, "giving no weight at all to the ex parte decision." McCarthy, 3 *McCarthy on Trademarks & Unfair Competition,* § 32.30, n. 1 at 32–117 (3d ed. 1992). Nonetheless, this Court does give deference to the TTAB's findings. Regardless of the registrability of the phrase "Certified Angus Beef," the Court gives great weight to the determination of the TTAB that the phrase has acquired secondary meaning. But Plaintiffs have established evidence that carries "thorough conviction" the term is not generic. *Freedom Sav. & Loan Asso.,* 757 F.2d at 1181.

The facts presented to the TTAB involved the ability to obtain a registration on the federal register; the claims here involve exclusive rights to use and likelihood of confusion. McCarthy, *Trademarks and Unfair Competition,* § 32.31 at 738 (2d ed. 1984).[4] The refusal to register this mark on the Principal Register does not eliminate the possibility of confusion proscribed by the

---

4. Defendants cite the case of *Dunn v. Gull,* 990 F.2d 348 (7th Cir.1993), to support their argument that because Plaintiff failed to appeal the TTAB decision to the court of appeals, they are precluded from bringing this action. That position overlooks the portion of the *Dunn* decision

holding the Patent Office's refusal to register would *not* collaterally estop a federal court decision on the same issue where the agency failed to address other claims for relief. The instant case involves other causes of action such as likelihood of confusion, unfair competition and passing off.

Lanham Act nor does it necessarily defeat Plaintiff's claims of unfair competition. *Murphy Door Bed Co. v. Interior Sleep Systems, Inc.*, 874 F.2d 95 (2d Cir.1989); *Coach House Restaurant, Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551 (11th Cir.1991); *Freedom Sav. & Loan Asso., supra.*

## C. Classification of the Term

 When this matter was presented to the Court on the motion for a preliminary injunction, all parties argued the term "Certified Angus Beef" was a descriptive phrase, with the issue being whether it had obtained secondary meaning. Claiming the decisions of the TTAB constitute new evidence, Defendants now argue the term is generic and incapable of acquiring distinction.[5] "A term or phrase is generic when it is commonly used to depict a genus or type of product, rather than a particular product." *Id.* at 100. If the name brings to the mind of the public the type of product instead of connoting a single source of that product, it is generic. McCarthy, *Trademarks and Unfair Competition*, § 12:2 at 522 (2d ed. 1984). The best example is that of aspirin, a term which has widespread public acceptance as referring to the product instead of to one brand name thereof. *Id.* In order to disprove a term as generic, the user must show the "primary significance of the term in the minds of the consuming public is *not* the *product* but the *producer.*" *Id.* at 523 (citing *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938) (emphasis in original)).

 The TTAB alternatively referred to the phrase "Certified Angus Beef" as generic or "merely descriptive." *See* Exhibit I, Opinion of TTAB dated September 28, 1990 at 4–10, *attached to* Motion to Vacate. While the distinction between the two is sometimes difficult to ascertain, it is of crucial importance since a generic term may never be entitled to trademark protection although a merely descriptive term which has acquired secondary meaning is granted such relief by the Lanham Act. *Abercrombie & Fitch Co. v. Hunt-*

*ing World, Inc.*, 537 F.2d 4 (2d Cir.1976); 15 U.S.C. § 1052(f). The most lucid explanation of the difference between a generic term and a "merely descriptive" term is found in a footnote of the *Abercrombie* decision:

> A commentator has illuminated the distinction with an example of the "Deep Bowl Spoon":
>
> "Deep Bowl" identifies a significant characteristic of the article. It is "merely descriptive" of the goods, because it informs one that they are deep in the bowl portion. . . . It is not, however, "the common descriptive name" of the article [since] the implement is not a deep bowl, it is a spoon. . . . "Spoon" is not merely descriptive of the article—it identifies the article—[and therefore] the term is generic.

537 F.2d at 10–11, n. 11 (quoting Fletcher, *Actual Confusion as to Incontestability of Descriptive Marks*, 64 Trademark Rep. 252, 260 (1974)).

 Applying this analogy to the case at hand, the word "certified" describes the words "angus beef," which, of course, identify the product. Thus, while the "angus beef" portion of the term may indeed be generic, the phrase as a whole is descriptive of the product. In determining registrability of a phrase, the term must be considered as a whole. *United States Steel Corp. v. Vasco Metals Corp.*, 394 F.2d 1009 (C.C.P.A.1968). While this may include a perusal of each word, such consideration may not defeat trademark protection by breaking the phrase into separate components. The Fourth Circuit has used the same approach in ruling that three-letter combinations which designate precision punches were descriptive, not generic, terms. *Dayton Progress Corp. v. Lane Punch Corp.*, 917 F.2d 836 (4th Cir. 1990). The first letter in the combination stood for the class of the punch, the second letter stood for the function of the punch, and the third letter stood for the shape of the hole to be made by the punch. Although the court reviewed the function of each letter in the term, it considered the effect of the term as a whole in ruling the terms were descrip-

---

**5.** The Lanham Act does not support a claim for infringement where the mark is generic. *Mur-*

*phy Door Bed Co.*, 874 F.2d at 101.

tive, not generic. *Id.* at 839. The court affirmed the district court's determination that the unregistered terms were entitled to trademark protection under the Lanham Act because they had acquired secondary meaning. *Id.* at 839.

Likewise, Plaintiffs here seek no protection of the terms "angus" or "beef" or even "angus beef," but instead seek protection of the phrase "Certified Angus Beef." The TTAB ruling affirmed the conclusion of the Examining Attorney below who opined the term "certified" was "clearly generic" and the phrase itself was "highly descriptive." *See* Exhibit I, Opinion of TTAB dated September 28, 1990, and Exhibit H, Examining Attorney's Appeal Brief dated April 24, 1990, *attached to* Motion to Vacate. The Court notes, however, the admission by the TTAB that other designations containing the word "certified" have been registered by the Board. *See* Exhibit I, Opinion of TTAB at 8. *See also, USAchem, Inc. v. Sands,* 185 U.S.P.Q. 387 (D.C.N.M.1975) (holding the term "certified" entitled to trademark protection).

■■■ Moreover, the fact that Plaintiff disclaimed the words "angus beef" in its application for registration of its certification mark does not preclude it at this juncture from attempting to obtain protection of the phrase "Certified Angus Beef." *Vasco Metals Corp.,* 394 F.2d at 1012.[6] "The effect of a disclaimer is to disavow any exclusive right to use of a specified word, phrase, or design outside of its use within a composite mark." *Pizzeria Uno Corp.,* 747 F.2d at 1529. Disclaiming "angus beef" from the registered certification mark does not amount to a disavowal of exclusive right to use the phrase "certified angus beef," although it would do so as to "angus beef."

The Court has also considered other cases where terms have been found to be descriptive rather than generic. In *Burger King Corp. v. Pilgrim's Pride Corp.,* 705 F.Supp. 1522 (S.D.Fla.1988), *aff'd without op.,* 894 F.2d 412 (11th Cir.1990), defendant also argued that the plaintiff's registered mark was a composite mark: Burger King Chicken

Tenders and Design. Defendant claimed no trademark rights could arise in the unregistered term "Chicken Tenders," arguing that within the industry, the term was generic. The court held evidence that the term was not generic among the consuming public was determinative. The term was found to be descriptive and secondary meaning had been established by the evidence. Likewise, the phrase "Honey Baked Ham" is a descriptive term with acquired secondary meaning, not a generic name for hams which have been baked with a honey glaze. *Schmidt v. Quigg,* 609 F.Supp. 227 (E.D.Mich.1985). *See also, First Federal Sav. & Loan Assn. v. First Federal Sav. & Loan Assn.,* 929 F.2d 382 (8th Cir.1991) (holding the name "First Federal" describes but is not the generic name for the first federally-chartered savings and loan).

At the hearing on the preliminary injunction, Defendants' witnesses testified that they, as well as the targeted customers, associated the term "Certified Angus Beef" with the Plaintiff and its beef program. *See* Order, filed October 26, 1992. Plaintiff's evidence established exclusive use of the registered mark since the late 1970's and attested to promotional techniques used for the product which include the phrase. *Id.* Indeed, the Defendants' own witnesses testified that throughout the industry the phrase is known to refer to the certification source—the American Angus Association. *Id.* The Court finds for the purposes of the preliminary injunction, subject to further factual findings in the case, that the term is descriptive, not generic, in contradiction to the finding of the TTAB.

Nonetheless, a descriptive phrase is not entitled to Lanham Act protection in the absence of secondary meaning. The Fourth Circuit has held that—

"To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." As one commentator has stat-

---

**6.** The Examining Attorney seemed to rely in part for its decision on the fact that Plaintiffs had previously disclaimed those words. *See* Exhibit H, Examining Attorney's Appeal Brief at 10.

ed, "[t]he prime element of secondary meaning is a *mental association* in buyers' minds between the alleged mark and a single source of the product."

*Dayton Progress Corp.*, 917 F.2d at 839 (citations omitted).

This Court discussed the evidence produced at the hearing in connection with this issue in the Order of October 26, 1992, and concluded secondary meaning had been established. Order, filed October 26, 1992 at 818–19. Applying the tests used there as well as that enunciated in *Dayton Progress Corp.*, *supra*, the Court reaffirms its finding.

Having found the phrase "Certified Angus Beef" to be descriptive with acquired secondary meaning, the Court reiterates its finding that the use of the phrase "Certified Angus Beef" by Defendants to describe their product or in the form of comparative advertising previously addressed will result in a substantial likelihood of confusion. *Id.* The evidence has shown that the appearance of the phrase "Certified Angus Beef" or its use in conversation establishes a link in the minds of the customers with Plaintiff as the certification source. Defendants request the ability to use the phrase in describing its "Supreme Angus Beef" program. The preliminary injunction does not prohibit Defendants from using the term "certified" to describe its program nor does it prohibit Defendants from truthfully stating the program is certified by the U.S.D.A. However, the use of the phrase "Certified Angus Beef" in conjunction with the term "Supreme Angus Beef" would cause confusion in the minds of the public as to the certification source, creating the distinct impression that Plaintiff is promoting a new line of meat product. *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145 (4th Cir.1987). Of course, Defendants may use the term "certified" in conjunction with their product as long as the use is not designed to create the impression that Plaintiff is the certification source. For example, "Supreme Certified Angus Beef" would violate the terms of the Order. Defendants, on the other hand, may state the "Supreme Angus Beef" program is certified by the U.S.D.A. if appropriate approvals have been attained. Defendants may not claim or describe the "Supreme Angus Beef" program as "Certified Angus Beef" or "the same as 'Certified Angus Beef.'"

Defendants previously argued their entitlement to fair use of the phrase "Certified Angus Beef." As stated above, Defendants may use the term "certified" in its ordinary, descriptive sense as long as it does not tend to confuse the public as to the certification source. *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 796 (5th Cir.1983). The mere inclusion of the word "Supreme" before the phrase "Certified Angus Beef" is not sufficient to identify certification source and establish fair use. *Dayton Progress Corp.*, 917 F.2d at 840. Fair use would be established only when the word was used to show the quality of the goods and not the source thereof. *Burger King Corp.*, 705 F.Supp. at 1529. Defendants have not shown the Court in what manner they wish to use the phrase beyond the general statement that they desire to "use the . . . phrase 'Certified Angus Beef' in describing Sysco's 'Supreme' Angus Beef Program." Motion to Vacate at 14. This does not meet the burden on Defendants to show the use intended, that the use of the phrase is not as a mark, but only to describe the product fairly and in good faith. *Burger King Corp.*, 705 F.Supp. at 1529.

In addition, Plaintiff alleges unfair competition claims as well as infringement, and the former claim is not precluded by a determination of the TTAB. *Murphy Door Bed Co.*, 874 F.2d at 102. Where a generic term which has been in public use acquires secondary meaning because of the developer's use thereof, the term may be entitled to protection as to the claim for unfair competition. *Id.*

If the name of one manufacturer's product is generic, a competitor's use of that name, without more, does not give rise to an unfair competition claim under section 43(a) of the Lanham Act. Nevertheless, such a claim "might be supportable if consumer confusion or a likelihood of consumer confusion arose from the failure of the defendant to adequately identify itself as the source of the product."

*Blinded Veterans Asso. v. Blinded American Veterans Foundation*, 872 F.2d 1035, 1043 (D.C.Cir.1989) (quoting *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 939 (7th Cir.1986)).

 Therefore, because the Plaintiff has alleged unfair competition claims, Plaintiff is entitled to a preliminary injunction even in the event the term is generic in order to protect from "passing off" of the Sysco product as the product of plaintiff. *Id.* Evidence of such "passing off" was adduced at the hearing from the testimony of Defendants' own sales representatives. *See generally,* Order, filed October 26, 1992 at 812–14. Dave Miller told Daniel Flynn, product development manager, that he "might" have told a potential customer the Supreme Angus Beef product was Certified Angus Beef. *Id.* at 813; *see supra* at 813. Moreover, Plaintiff produced affidavits from sales representatives who overheard Defendants' employees tell customers the Supreme Angus Beef product was "the same as" Certified Angus Beef and/or that Sysco could ship Certified Angus Beef product. *Id.* at 813–14; *see supra* at 813. One of Defendants' sales representatives, Ron Bagwell, admitted that the customer would be confused by the presence of the logo "Certified Angus Beef" on a price list for the Supreme Angus Beef product. *Id.* at 813; Transcript at 131–32. The Plaintiff is therefore entitled to a preliminary injunction during the pendency of the litigation to maintain the status quo.

## II. FORM OF NOTICE TO CUSTOMERS

The Court has reviewed the contentions of the parties concerning the form of notification to customers, including the Plaintiff's motion for reconsideration. The Court finds the form of notice proposed by Defendants in paragraphs 1 through 6 on pages 3 and 4 of the Defendants' response to the Plaintiff's motion for reconsideration, filed December 3, 1992, will meet the requirements of the preliminary injunction. However, the Court will order the Defendants to provide a copy of page 820 of the Order of October 26, 1992, beginning with "III. ORDER," and pages 820 through 821. The Court agrees with the

parties that it is unnecessary to send a complete copy of the preliminary injunction. Compliance shall be made within the time period specified in this Court's Order of December 23, 1992.

## III. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' motion to vacate the preliminary injunction, and/or portions thereof, is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that Plaintiff's motion for reconsideration is **DENIED IN PART AND GRANTED IN PART** as outlined above. Defendants shall provide notice to customers pursuant to the terms of the preliminary injunction in the form discussed above and within the time period specified in this Court's Order of December 23, 1992.